UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                    Case No. 3:20-cr-00092

                        Plaintiff,

        v.                                                             MEMORANDUM OPINION
                                                                              AND ORDER

Dominic Wright,

                        Defendant.

## I.  INTRODUCTION

Defendant Dominic Wright seeks to suppress evidence obtained during a stop of his person

on October 16, 2019.  (Doc. Nos. 11, 16, 20, 24).  The government has filed two responses in

opposition to Wright's motion.  (Doc. Nos. 14 & 22).  On December 11, 2020, I held a suppression

hearing at which the parties offered evidence and oral argument in support of their respective

positions.  After hearing the arguments of counsel and reviewing the evidence submitted, I conclude

the stop and search was permissible under the Fourth Amendment and deny Wright's motion.

## II.  BACKGROUND

On October 16, 2019, at approximately 2:00 a.m., emergency personnel in Lima, Ohio

received a 911 call from a woman reporting that a man named Dominic was about to steal her car.

(Doc. No. 12). The woman provided her address and told the dispatcher the man owned a gun.[1] When asked by the dispatcher to identify herself, the woman did so. (*Id.*).

During the 911 call, the dispatcher put out a call for officers to respond to an unwanted person at the address provided by the caller and told the officers that a man named Dominic was trying to take the caller's car. (Doc. No. 19 at 10-11). The dispatcher also told officers that the man owned a gun. The dispatcher did not include the woman's name in the call she put out to officers.

Lima Police Department Officer Zach Carpenter was one of several officers who responded to the report from dispatch. (Doc. No. 19 at 10-11). Carpenter arrived on the scene less than five minutes after the call was placed and his bodycam was activated a few moments after he exited his vehicle. (Doc. No. 12). As he approached the residence, he shined his flashlight on the porch area and Wright emerged saying there was nothing going on. (*Id.*). Officer Carpenter asked him to step down from the porch area. (*Id.*). Wright complied, taking three steps down from the porch and arriving at Carpenter's side, where Carpenter stopped him by grabbing one of his arms. (*Id.*). Carpenter testified that he believed Wright was trying to walk past him. (Doc. No. 19 at 13).

After stopping Wright, Carpenter asked him to place his hands behind his back. (Doc. No. 12). Carpenter asked Wright if he had anything on him that the officers needed to worry about, and Wright said no. (*Id.*). Carpenter then conducted a pat down and found a firearm tucked into the front part of Wright's waist band. (Doc. No. 19 at 15).

Wright was arrested and subsequently indicted for being a felon in possession of a firearm.

---

[1] Initially, the caller said the man had his pistol on him, but after being asked by the dispatcher where the gun was, the caller clarified that she did not know if he had the gun on him, she only knew that he owned one and that he was not supposed to. The dispatcher then advised officers that the caller knew that the man owned a gun but did not know whether he had it on him. (Doc. No. 12).

## III.  DISCUSSION

Wright argues the evidence should be suppressed because both the stop and the subsequent frisk violated his rights under the Fourth Amendment.

### A.  The Stop

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons … against unreasonable seizures.'" *U.S. v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010) (quoting U.S. Const. amend. IV.)  This right extends to the kind of investigatory stop at issue here.  Under *Terry v. Ohio*, 392 U.S. 1 (1968), and progeny, an officer may stop a person only if he "has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *Johnson*, 620 F.3d at 690 (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)).

"The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'"  *Navarette v. California*, 572 U.S. 393, 397 (2014).  The standard takes into account the totality of the circumstances, and requires a level of suspicion that is "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probably cause."  *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

The government does not contest that Carpenter seized Wright at the moment he grabbed his arm to stop him.  The question is whether, based on the facts leading up to this point, Carpenter had a reasonable suspicion that Wright had been, was, or was about to be engaged in criminal activity.

Here, the relevant facts and circumstances included (1) the time of day and the area in which the residence was located; (2) the information reported in the 911 call and relayed to Carpenter by dispatch; and (3) Carpenter's personal observations.

*1.  Time of Day and Area*

The government asserts that the time of day and the fact that the encounter took place in a high-crime area both support the existence of reasonable suspicion.  While courts have recognized these kinds of facts are relevant to the consideration, I find they are not entitled to great weight here.  *See Johnson*, 620 F.3d at 692-93 (describing these as "context-based factors that would have pertained to anyone in the [area] at that time and should not be given undue weight.").

*2.  The 911 Call*

Wright argues the information Carpenter obtained from the 911 call cannot support a finding of reasonable suspicion because the call was an "anonymous tip."  (Doc. No. 11 at 5).  The government contends it was not an anonymous tip because the caller provided dispatch with their name[2] and address, and they were present at the scene when police arrived.  (Doc. No. 14 at 7).

Although the caller did not provide her name in time for that information to be relayed to Carpenter before he stopped and frisked Wright, the call was not an anonymous tip in the way that Wright suggests.  Wright relies on *Florida v. J.L.*, 529 U.S. 266 (2000) and *Alabama v. White*, 496 U.S. 325 (1990), both of which involved situations where an unknown person calling from an unknown location who provided no means for the police to test their credibility short of investigating the person that was the subject of the tip.  In *J.L.*, the Court addressed the underlying concern in these kinds of cases, explaining that an anonymous tip is "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated" *J.L.*, 529 U.S. at 270 (citing *Adams v. Williams*, 407 U.S. 143, 146-47 (1972)).

Here, by contrast, there is a 911 call, placed by a victim of a crime that is in progress, that is different in nature from a call made by an anonymous tipster.  In this kind of situation, a reasonable officer evaluating the information relayed from dispatch would know that while the caller's name

---

[2] The caller did not provide her name to dispatch in time for Carpenter to be aware she had done so.

may be unknown, the caller, by providing her address and asking for help at her location, has provided ways to verify who she claims to be and exposed herself to the risk she will be held responsible if her allegations turn out to be fabricated. And although the officer would be relying on information from a source they do not know, Carpenter testified that this is usually the case when responding to a 911 call. (Doc. No. 19 at 24).

Thus, this is not an anonymous tipster case because the present situation is significantly different from one where a person calls in to report criminal activity but refuses to identify themselves. But even if this case was analyzed under the framework of the anonymous-tipster cases that Wright relies on, the result would be the same. It would be reasonable for an officer under these circumstances to consider and rely on the information contained in the 911 call.

"[U]nder appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" *Navarette*, 572 U.S. at 397. In *Navarette*, the Supreme Court examined whether a 911 call reporting that a vehicle had run the caller off the road was enough to support a reasonable suspicion that the driver was intoxicated. *Id.* at 395. In holding that it was, the Court relied on the following: the tip was being made contemporaneously with the observation of criminal activity and under the stress of excitement caused by a startling event, the caller was claiming eyewitness knowledge of the criminal activity at issue, and there was reason to think the caller was telling the truth because police found the car she described at a location consistent with her report. *Id.* at 399-400. The Court also noted that in light of recent technological and regulatory developments, the caller's use of the 911 emergency system was itself one of the relevance circumstances that justified a reasonable officer's reliance on the information reported in the call. *Id.* at 401.

In the present case, many of the same considerations lead to the conclusion that the 911 call was sufficiently reliable to support the reasonable suspicion needed for Carpenter to make an

investigatory stop.  The 911 call reported that a man named Dominic was engaged in criminal activity—namely, attempting to steal the caller's vehicle.  The call was made by someone claiming to be the victim of the alleged activity, and it was made contemporaneously with their observation of the activity.  The caller, who claimed this was happening at her residence, was necessarily claiming eyewitness knowledge of what she was reporting.  Additionally, Carpenter testified that it is common for him to be unaware of the caller's identity when responding to a 911 call.

Under these circumstances, I find the 911 call contained sufficient indicia of reliability to support Carpenter's belief in the facts alleged by the caller.  Thus, Carpenter was justified in believing there was a man named Dominic, who owned a gun, and was attempting to steal the caller's car at the address provided, all of which strongly supports a reasonable belief that the individual he encountered minutes later was engaged in criminal activity.

   *3.  Carpenter's Personal Observations*

What Carpenter witnessed when he arrived on the scene further supports finding he had a reasonable suspicion that Wright was engaged in criminal activity.

First, Carpenter's observations corroborate some of what was reported in the 911 call, thereby increasing the credibility and reliability of the caller.  He arrived at the scene of a reported crime less than five minutes after the call was made reporting it.  While there, he saw a man standing on the porch of the specific residence the caller reported, and a car running in the driveway.  Each of these facts is at least consistent with the claim made by the 911 caller that there was an unwanted person on her property trying to take her car.  Between the information contained in the 911 call itself, and the corroborating facts Carpenter witnessed upon his arrival, there is enough to support a reasonable suspicion that criminal activity was afoot.

Second, Carpenter's observations also support finding there was reasonable suspicion that it was Wright in particular that was engaged in criminal activity.  Wright was the only person at the

reported location, mere minutes after the call came in.  *See United States v. McMullin*, 793 F.3d 943, 947 (6th Cir. 2014) (reasonable suspicion existed where officers responded to a reported breaking-and-entering and found defendant standing in front of the same window that had reportedly been broken into only a few minutes prior); *see also* United *States v. Chambers*, 638 F. App'x 437, 441-42 (6th Cir. 2015) ("We have observed repeatedly that a suspect's presence near the location of a reported crime can be a salient factor giving rise to reasonable suspicion.") (collecting cases).

And Wright acted nervous and evasive, repeatedly telling officers there was nothing going on before he was even asked any questions.  *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.").  Carpenter also testified that Wright looked slightly panicked and he believed Wright was trying to walk past him.  (Doc. No. 19 at 14-15).  While this behavior falls short of headlong flight, I find Wright's actions contributed to a reasonable belief that he was trying to avoid an encounter with the officers.  *See United States v. Smith*, 594 F.3d 530, 541 (6th Cir. 2010) (defendant's attempt to push through and past officers entering a building contributed to finding reasonable suspicion); *United States v. Stittiams*, 417 F. App'x 530, 534-35 (6th Cir. 2011) (While a defendant can create any number of innocent explanations to justify his actions, the appropriate question is not what he actually intended to do, but rather whether his actions, viewed from a reasonable officer's viewpoint, indicated flight from a crime scene, criminal activity or some other suspicious circumstance.").

####    4.    *Reasonable Suspicion Existed At The Moment Carpenter Stopped Wright*

After taking into account the totality of the facts and circumstances described above, I find that at the moment Officer Carpenter stopped Wright, he had a reasonable suspicion that Wright was engaged in criminal activity.  But Wright raises one other argument I must address here.

Wright attacks the investigative steps that Carpenter did not take, arguing that Carpenter could not have had a reasonable suspicion because he did not conduct an adequate investigation prior to stopping Wright.  Specifically, Wright suggests that Carpenter could have: investigated the running vehicle, asked Wright why he was on the porch, asked Wright about the running vehicle, or asked Wright whether his name was Dominic.

While each of these would have been permissible investigative techniques under the circumstances, failing to take these steps does not render Carpenter's actions unconstitutional.  This is because "[o]nce reasonable suspicion [] arises, '[t]he reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques.'" *Navarette*, 572 U.S. at 404 (quoting *Sokolow*, 490 U.S. at 11).

### B.  The Frisk

"When an officer makes a Terry stop, he may also perform a precautionary search—known as a "frisk" or "pat down"—whenever he has "reasonable suspicion" that the person searched may be armed and dangerous." *United States v. Pachecho*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *Knowles v. Iowa*, 525 U.S. 113, 118 (1998)).  "Ultimately, the test is whether 'a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger.'" *United States v. Pachecho*, 841 F.3d 384, 390 (6th Cir. 2016) (quoting *United States v. Noble*, 762 F.3d 509, 521-22 (6th Cir. 2014)).

Many of the same facts that supported the reasonable suspicion necessary for the stop also support the existence of reasonable suspicion here.  Carpenter arrived at the scene in response to a 911 call, a fact which itself would warrant a heightened sense of caution.  Moreover, the call reported there was an individual who was trying to take the caller's car.  *See United States v. Bullock*, 510 F.3d 342, 347 (D.C. Cir. 2007) ("car theft is a crime that often involves the use of weapons and other instruments of assault that could jeopardize police officer safety, and thus justifies a protective

frisk under Terry to ensure officer safety"); *see also United States v. Bradley*, Nos. 89–6299, 89–6530, 1990 WL 124205, at *2 (6th Cir. Aug. 27, 1990) ("It was reasonable for the officer to believe that appellant, who was suspected of having recently been involved in a car theft, might have been armed and dangerous.").  And most significantly, Carpenter was told the 911 caller reported that the individual on her property owned a gun.  While the caller did not know whether this person was actually carrying a gun at the time, the fact that she knows he owns one supports a reasonable suspicion that he may be armed and dangerous.  All of this, coupled with Wright's seemingly nervous and evasive behavior, is enough to support Carpenter's reasonable suspicion that Wright may be armed and dangerous.

### IV.    CONCLUSION[3]

For the foregoing reasons, Wright's motion to suppress is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[3] Because I have found that Wright's Fourth Amendment rights were not violated by the stop and frisk that Carpenter performed, I need not address the government's argument that the evidence is admissible under the inevitable discovery doctrine.